RECEIVED
JUN 3 0 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

. UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

| | |
|---|---|
| Nathan J. Sturdivant )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>Pete Geren )<br>Secretary of the Army )<br>)<br>Defendant ) | Civil Action 08-006 (EGS) |

RESPONSE

RESPOND TO JUDGE'S ORDER AND MOTION TO STAY IN DISTRICT COURT FOR THE DISTICT OF COLUMBIA <u>MOTION FOR APPOINTMENT OF COUNSEL</u>

There is a need to address issues of venue and an obvious need to trial this case in District Court for the District of Columbia. The Secretary of the Army has offices across the country. The United States Attorney's Office represents the Secretary of the Army in discrimination suits similar to this suit in judiciaries across the country, including in the District of Columbia. It should be apparent Judge Rebecca Beach Smith of Eastern District of Virginia would not grant a request of venue if it presented a disadvantage for the defendant.

I recently relocated home to the U.S. after almost six years in Germany. The reason for having the case transferred to the District Court for the District of Columbia had more to do with having proximity to resources. Thus far, I have not been able to

compile resources and afford legal assistance to properly bring this case to the courts. The defendant and its legal representatives maintain offices and has jurisdiction in many localities including the District of Columbia. I humbly plead to the court to adhere to my request and proceed with these matters in the United States District Court for the District of Columbia. I also plead to the court to appoint counsel to represent me in this case. There are determining factors the reason I cannot afford legal counsel to represent me in the complex legality embedded in this case.

The court will discover that on **November 3rd 2006** I was employed at Army's Headquarters in Heidelberg, Germany when the defendant retaliated against me and unlawfully banned me without notice from employment at all military installations in Europe **(EXHIBIT 1:Official notice of banishment).** For almost a year I had no knowledge I was banned from military employment and installations in Europe.

From January of 2007 to October 2007 I began seeking new employment at military installations in Europe. But my attempts for employment were always rejected. I had no prior knowledge I was banned from employment and military installations. I discovered the banned **October 11th 2007** when I attempted to enter Ramstein Air force Base in Kaiserslantern, Germany and was rejected at the security gate. The ban was initiated **November 3rd 2006** and had finally reached all security systems to block me out. At that point, I was advised by security to contact Mr. Ralph Brecht of the Civilian Misconduct Action Advisor at Army Headquarters' in Heidelberg, Germany.

On **October 12th 2006** I phone Mr. Brecht's office. Mr. Brecht emailed me a copy of the ban and I was shocked over the contents as it related to the reason of the ban. More importantly, the defendant failed to serve proper notice of the ban. This action by the

defendant affected my ability to achieve employment and income in a foreign country for the year 2007 **(EXHIBIT 2: Department of Defense W2 form).**

The defendant failed to notify me of the ban through supervisors or certified mail. However, throughout the EEOC investigation I received official documents mailed to me through certified mail from the EEOC Administrative Judge and defendant's attorneys.

All Army and civilian personnel in the European theater have an assigned APO AE, Post Office Box at an Army installation where they are serving. I do not understand why defendant failed to serve a certified letter of the ban to my assigned APO AE address. Army and civilian personnel working for the United States Army in Europe is automatically registered an APO AE address. The APO AE address is the official address used by the Army to communicate with all personnel employed in Europe.

It is rare the Army would send official mail to an employee living on the economy in Europe. In most instances, a foreign address is not tabulated on official business or personnel records. I maintained an Army's APO AE mailing address since the start of my employment in 2002. I should have lawfully received a certified copy of the ban to my APO AE address from the defendant to notify me of the extreme decision to nullify my ability for employment and access to U.S. facilities in a foreign country.

The ban notification was dated **November 3rd 2006** and initiated during the beginning of the Department of Defense Civilian Personnel Management Fact Finding Oral Examination that recorded sworn testimonies from co-workers employed at the station where I worked. At the date of the ban notification, I was on sick leave from my work station but managed to attend the Fact Finding Conference Oral Examination held **November 6th and 7th of 2006** at military Headquarters in Heidelberg, Germany.

Ironically, all supervisors were in attendance as witnesses in the Fact Finding Conference but failed to notify me of the notice of banishment that had circulated throughout supervisory departments. My supervisors failed to send notification of the ban to my assigned APO AE , U.S. Post Office Box **(EXHIBIT 3: Department of Defense Fact Finding Conference November 6, 2006, supervisors in attendance; Morale, Welfare, and Recreation Director Nora Carol Ferguson; Child Development Center Director Aubrey Denaire McCaster; School Age Services Assistant Director Lucy Ann Olive; and Child Development Center Assistant Director Laura Roberts).**

Had I been properly notified of the ban I would have appealed the ban, which would have resulted in a favorable decision because evidence suggest I committed no infractions that were alleged in the ban notification. I also would have immediately filed an amendment opposing the ban and brought it to the attention of the EEOC Administrative Judge. The defendant deliberately withheld notifying me of the ban to evade EEOC evaluation of its merits.

When I discovered the ban, the compliant against the defendant had already been filed in the Eastern District Court of Virginia. The results of the ban from military employment and installations were financially devastating that hampered my ability not only to relocate my family and me to the states in a timely fashion but also hampered my ability to financially secure legal counsel to pursue the defendant for its discriminatory and retaliatory behavior. My quest for legal representation has been financially out of reach even though facts in the case wholly indicates the defendant have indeed discriminated against me and others and relentlessly retaliated against me when I exposed

defendant's discriminatory and retaliatory behavior to government agencies in Washington DC.

The Department of Defense Fact Finding Conference Oral Examination involved sworn testimonies of employees at my work station. These testimonies are crucial to this case because they show countless contradictions by the defendant's witnesses **(EXHIBIT 4: Department of Defense Fact Finding Conference November 7, 2006 Jennifer Cozette Sweet sworn testimony).**

Sworn testimonies in the Oral Examination also validate my claim of race discrimination in the workplace **(EXHIBIT 5: Department of Defense Fact Finding Conference November 7, 2006 Kenyona Rosado-Melendez and Tamesha Lasha Betton sworn testimonies).**

## FACTS

In May of 2001, I graduated from college and was working on a second Bachelor degree when September 11th attacks occurred. I wanted to do something to assist and support the U.S. military. I decided to seek employment with the military as a civilian employee overseas. I chose to work with the U.S. military in Germany because it was closer to the states than U.S. military installations in Japan and South Korea.

In March of 2002 I arrived in Germany and started working for the U.S. military as a Desk Clerk at a U.S. military in Wiesbaden, Germany. I was employed at the hotel for 6 months then transferred to a position more in my field as a Program Assistant at Child and Youth Services at an Army installation in Wiesbaden, Germany.

I successfully completed the background checks and security clearance at Child and Youth Services. It was the same process I later completed at Child and Youth Services at Army Headquarters in Heidelberg, Germany.

I was employed at Child and Youth Services in Wiesbaden, Germany for more than 2 years. The United States Attorney's Office memorandum that negatively characterizes my behavior and performance at Army's Headquarters is untrue The recommendations I earned at Child and Youth Services at Army's installation in Wiesbaden, Germany are in line with my character and professionalism in the field, especially when working with young students **(EXHIBIT 6: Recommendations and references).**

My employment difficulties at Army Headquarters in Heidelberg, Germany developed when I resisted racial discrimination and segregation that was initiated by the defendant at a School Age Program where I was employed.

On **December 12, 2005** I was approach by African American co-workers at School Age Services at Army Headquarters in Heidelberg, Germany. They were frustrated over discriminatory practices by the defendant in segregating employees based on race in the division of labor. African American co- workers Tamesha Betton, Kalith Scoggins, Tanesha Jett, and Icisha Draughn were concerned over these issues and wanted to discuss discrimination and segregation that the defendant had designed in the **Rec.** and **Soft zones** in the workplace. During this time the **Rec. zones** at School Age Services were assigned to African American staff while **Soft zones** were assigned to white staff.

Work responsibilities in the Rec zones involved staff controlling play groups and constant interaction with children which often involved staff taking groups of children

ages 6 through 10 years outdoors on the playgrounds for extensive hours daily. This was especially true during the winter months. Work responsibilities in the Soft zones involved staff interacting with children indoors and basically teaching children Arts and Crafts, Imaginary Play, Fine Arts, and table games in the Game Room. My particular work zone was in the homework lab and was considered a skilled zone.

African Americans co-workers were disturbed that they held the same job description, pay grade, and rank as white staff but were permanently stuck in the Rec. zones and did not have the opportunities to exhibit their skills working with young students in the Soft zones. African American co-workers wanted equality in the work zones. I suggested **staff rotation** in the zones would give staff equal time in the Rec. and Soft zones. African American staff planned to bring the issue of staff rotation to the School Age Services monthly staff meeting. I volunteered to bring the topic to the meeting and explain the benefits of staff rotation in the work zones.

On **January 4th 2006** our monthly staff meeting began. When African American staff and I casually brought the subject of staff rotation to the meeting our proposal was harshly, quickly, and repeatedly, rejected by the program's Director and staff members who benefited from the Soft zones. The discussion of staff rotation became a heated debate. The defendant and beneficiaries of the Soft zones refused to compromise a fair position **(EXHIBIT 7: Equal Employment Opportunity Commission Administrative File and Index, Docket # AREUHEID06MAR01121: Letter to EEO Investigator Mr. Day April 4th 2006).**

Days after the January 4th meeting the defendant began sending me outdoors on regular bases with children even though my work station was located in a skilled zone

assisting students K5 with homework assignments. More importantly, the work environment at School Age Services was growing hostile because I was assisting a co-worker with an EEO complaint against the defendant for discrimination and harassment in the workplace **(EXHIBIT 5: Department of Defense Fact Finding Conference November 7, 2006 Kenyona Rosado-Melendez and Tamesha Lasha Betton sworn testimonies).**

African American staff in the Rec zones was being constantly written up by supervisors over incident reports involving minor incidents with children. Incidents between children occurred readily because there were more interactions between children's play groups in the Rec. zones than Soft zones. White co-workers in Soft zones were never written up by supervision but also were critical of African American staff incident reports occurring in the Rec. zones. African American co-workers were concern over these practices by the defendant **(EXHIBIT 8: Equal Employment Opportunity Commission Administrative File and Index, Docket # AREUHEID06MAR01121: Email to Mr. Gessey).**

The defendant retaliated against me for standing up against discrimination and segregation in the workplace and offering staff rotation in the January 4th 2006 staff meeting. The defendant retaliated against me for assisting a co-worker in the preparation of an Equal Employment Opportunity complaint against the defendant. The defendant retaliated against me when the defendant deliberately lowered an incentive program that caused a drastic decrease in student's participation in the homework lab where I was employed. These efforts by the defendant were design to harass me and force my resignation. The defendant failed to substantiate a rationale for changing an academic

incentive program for elementary students in the middle of the school year **(EXHIBIT 9: Department of Defense Fact Finding Conference November 6th and 7th, 2006 Tricia Ann Bolyard and Lucy and Olive sworn testimonies).**

The defendant attempted to cover-up retaliation and justified lowering the incentive program base on fabrications that alleged I needlessly distributed points to students. However, during the Department of Defense Fact Finding Conference the defendant could not substantiate this claim. More importantly, a co-worker assigned to my work area contradicts defendant's claim and testified I awarded points according to students who showed improvement in math, science, and complex projects. I also awarded points to students enrolled in gifted programs at their school in an attempt to hold student's attention and participation in the program. My allotments of points were consistent with incentive programs associated with young primary school students **(EXHIBIT 4: Department of Defense Fact Finding Conference November 7, 2006 Jennifer Cozette Sweet sworn testimony).**

The defendant was aware reducing an incentive program from 25 points to 3 points in the middle of the school year would affect elementary student's attendance and motivation. These efforts by the defendant were directed to disrupt the homework lab and create a hostile environment to force my resignation **(EXHIBIT 5: Kenyona Rosado-Melendez testimony of decrease of student's enrollment).**

The defendant retaliated against me by appointing my co-worker with the same rank and pay grade my supervisor. The defendant was knowledgeable the Civil Personnel Office had not appointed a supervisory position in the homework lab where I was

employed. The defendant unlawfully appointed my co-worker my supervisor in an effort to discourage me and force my resignation.

On March 15, 2006 I filed a complaint with the Equal Employment Opportunity Office of the United States Justice Department in Washington DC and the Equal Employment Opportunity Commission Headquarters and described the discriminatory and retaliatory patterns by the defendant and the lack of minority representation in supervisory positions within the Child and Youth Services at Army's Headquarters in Heidelberg, Germany.

On **March 17, 2006** I submitted a letter to the defendant to inform the defendant of my actions and possible pending investigations by governmental agencies. One hour after submitting the letter the defendant retaliated against me and placed me on suspension. The defendant verbally informed me I was being suspended for an incident report I wrote (Two weeks earlier) on March 3rd 2006. I phoned the Director of Child and Youth Services at Army Headquarters and she too informed me I was being place on suspension for an incident report written (Two weeks earlier) on March 3rd 2006. I immediately filed an Equal Employment Opportunity complaint with the EEO office at Army Headquarters in Heidelberg, Germany and described the events that occurred **(EXHIBIT 10: Equal Employment Opportunity Commission Administrative File and Index, Docket # AREUHEID06MAR01121: Letter to EEO Investigator Mr. Day dated March 24, 2006).**

On May 16, 2006, the defendant phoned and requested I come to my work station at School Age Services at Army Headquarters for a meeting. I remained on the March 17, 2006 suspension and met with the defendant who in returned presented a Proposal for

10

Separation of Cause. The proposal stated I was going to be separated from my employment over an alleged incident that occurred 85 miles away from my work station in a town where I lived over a dispute with a utility company concerning billing. I was informed I had 10 days to respond to the Proposal for Separation for Cause (**EXHIBIT 11: Department of Defense Fact Finding Conference November 6, 2006 Nora Carol Ferguson sworn testimony. Equal Employment Opportunity Commission Administrative File and Index, Docket # AREUHEID06MAR01121: Letter to Ms. Bonnie J. Ballard dated May 23. Suspension/leave of absent Notices dated March 17, 2006).**

After 90 days suspension/leave of absence, the defendant requested I return to work at Army Headquarters. I requested not to return to my work station at School Age Services because of the Equal Opportunity Employment investigation. I requested a compatible position within the Child and Youth Services organization. My request for compatible position was ignored. I was transferred to a lower ranking position as a Program Assistant at a Child Development Center at my same pay grade.

I was able to work for a few weeks when injuries I received in the gym and another injury in an accident all emerged and made me incapacitated to physically fulfill my duties at work. The defendant retaliated against me for participating in Equal Employment Opportunity activity when the defendant denied me family leave (FMLA). I repeatedly submitted medical prognoses to Child Development Center management requesting to release me from duty and allow me proper recovery time under FMLA.

The defendant deliberately stalled on my requests for sick leave and failed to deliver proper FMLA forms. The defendant allowed a lower level supervisor to review

my medical records, which is a violation of Title VII regulations governing privacy of personal medical information.

The supervisor repeatedly harassed me and prolonged forwarding proper FMLA documents. I had to result to contacting officials at the Air Force in Ramstein, Germany and request they email me FMLA forms for my physician to present to the defendant. *The supervisor ended up sending unauthorized medical forms unrelated to FMLA which is a violation of Title VII regulations governing FMLA procedures and documentation* **(EXHIBIT 12: Equal Employment Opportunity Commission Administrative File and Index, Docket # AREUHEID06MAR01121: Amendment of Compliant Letter to Ms. Bonnie J. Ballard dated August 25, 2006. Physicians prognoses, dated July 24, 2006; July 28, 2006; and September 01, 2006. Department of Defense Fact Finding Conference November 7, 2006 Natasha Nolletti Burney, sworn testimony. Department of Defense Fact Finding Conference November 6, 2006 Laura Roberts sworn testimony. Unauthorized medical forms dated August 8, 2006 sent certified mail by defendant).**

The defendant retaliated against me for exposing discriminatory and retaliatory behavior to the Department of Justice Equal Employment Opportunity branch, and to Equal Employment Opportunity Headquarters when on January 12, 2007 the defendant disqualified me from my position at Child and Youth Services at Army Headquarters in Heidelberg Germany. The defendant stated I was disqualified from my position based on minor unsubstantiated arrests that were dismissed in the courts and occurred 14 and 30 years ago. The defendant justify this analysis by focusing on an incident it had previously

cleared me of wrongdoing. The incident involved a false police report initiated by a former girlfriend made against me that alleged I physically assaulted her. German Polize presented evidence the former girlfriend had fabricated the story and issued a criminal complaint against her for falsifying a police report.

I was cleared of wrong doing by military police at my work station at Army's installation in Wiesbaden, Germany and by German officials as well. The problem with the incident was it never was corrected on the military police blotter. However, the defendant was knowledgeable it had on more than one occasion cleared me of any infractions in that particular case.

I started working for the military my goal was to work at Army Headquarters in Heidelberg, Germany. During that time I believe there were opportunities for job advancement at Army's Headquarters. I relocated to Kaiserslautern, Germany and applied for employment as a Homework Instructor at Child and Youth Services.

I was hired by Child and Youth Services but the hiring process halted and my application for employment was rejected by the Program Review Board of the Child and Youth Services at Army's Headquarters. The false police report that remained on the military police blotter at Army's installation in Wiesbaden was the reason the Board rejected my employment.

To appeal the decision I had to write a letter to the Program Review Board about facts in the case and submit a letter from the German prosecutor's office, which stated there was no evidence I committed wrong-doing **(EXHIBIT 13: Letter from Pam Primmer office dated September 09, 2005. Letter from German prosecutor's office**

13

dated October, 05 2005. **Letter to Program Review Board, Appeal of Administrative Decision).**

The Program Review Board rescinded its decision and I was hired on September 19th 2005 as Homework Associate Instructor at Army's Headquarters. But in light of these facts the false assault charge was one of the main articles that appeared in the *Notice of Banishment dated November 03, 2006 and the January 12, 2007 disqualification from my employment.*

The second allegation in the *Notice of Banishment and disqualification* derives from elements outside my control. It appears the Polize official who alleged I disrespected him was bias and influence to fabricate innuendos base on his conversation with the lower level supervisor who had previously denied my requests for FMLA. Although I was on sick leave in September of 2006, the supervisor informed the Polize official, I no longer worked for the military and I was going to be fired. The supervisor also stated in the report she was unaware of my address but on August 8, 2006 had sent unauthorized medical forms certified mail to my assigned APO AE Post Office Box. *Moreover, the Polize official who alleged I disrespected him had access to my EEO complaint because he is a liaison officer and works out of an office located at Army Headquarters in Heidelberg, Germany.* More importantly, the defendant in this case was knowledgeable I was not convicted in a court of law for allegations mentioned in the *Notice of Banishment and in the disqualification statements* **(EXHIBIT 14: Letter to Program Review Board and Polize precinct Kaiserslautern dated September 14, 2006. Polize official Incident Report dated September 13, 2006).**

The defendant exploited the 2004 false assault charge in the military police blotter and correlated it with unsubstantiated minor arrests on my background information that was dismissed in courts 13 to 30 years ago. The defendant sought to correlate false instances to expand its retaliation against me and disqualified me from my employment because I engaged in Equal Employment Opportunity activity **(EXHIBIT 15: Letters to EEO Director Ms. Ballard and Equal Employment Opportunity Commission Administrative Judge. Reporter's Certification).**

I humbly plea to the District court of Columbia to proceed with this case. There are witnesses that should be heard on critical issues I have described in these complaints. I have stated since March 15, of 2006 that the defendant has blatantly retaliated against me on every stage in the development of this case. More importantly, there are former co-workers who these reprisals by the defendant have affected forever.

I do not understand why the EEOC Administrative Judge was limited in its scope and failed to address the obvious factors that heavily fueled multiple incidents of retaliatory behavior of government officials in this case.

I plea to the United States District Court For The District Of Columbia to have mercy and review the evidence and factors I have tried my best to describe in this case. This has been a horrible experience in an attempt to do what I thought was best from the start. Thank you for your cooperation.

Sincerely,

*[signature: Nathan Sturdivant]*

Nathan Sturdivant

Certification of Services

I certify that the attached Response to the United States Attorney's Office and to the United States District Court for the District of Columbia dated 01-07-2008 has been served on the following dated 01-07-2008.

Clerks Office
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington D.C. 20001

United States Attorney's Office for the District of Columbia
555 4th Street, NW
Washington D.C. 20530

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**STURDIVANT**

                    Plaintiff(s)

              vs.                    Civil Case No: **08-006(EGS)**

**GEREN**

                    Defendant(s)

## NOTICE REGARDING BULKY EXHIBIT

Pursuant to the procedures for filing documents electronically. This notice serves as notification of bulky exhibits filed with the Clerk's Office. It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

                                              **NANCY MAYER-WHITTINGTON**

                                                           Clerk